IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

IN RE:                                             )
                                                   )
LLOYD RAY TRACKWELL, SR. and   )   Case No. 09-61596
JUDITH CHRISTINE TRACKWELL,    )
                                                   )
             Debtors.                         )

ORDER GRANTING DEBTORS' MOTION TO TURN
OVER ESCROW FUNDS BEING HELD BY
FIRST AMERICAN TITLE COMPANY OF OREGON (Doc. No. 512)

The instant motion concerns a dispute between Debtors Lloyd and Judith Trackwell and the buyers of their Oregon ranch property, Charles and Charlene Wikstrom, over whether a cattle chute was included as a fixture in the sale. For the reasons that follow, I conclude that the cattle chute was not a fixture and, since the sale agreement did not include any personal property, the cattle chute was not included in the sale. The Trackwells are, therefore, entitled to keep the cattle chute which they removed from the property prior to the sale, and First American Title Company of Oregon will be ordered to disburse the $15,000 being held in escrow to the Trackwells' counsel.

The Trackwells were the owners of approximately 7,800 acres of real estate in Oregon known as the Imnaha Ranch. Pursuant to this Court's Order and a contract for auctioneer Sheldon Good and Company to sell the Imnaha Ranch, a public auction sale was conducted on October 23, 2013. The Wikstroms were the successful bidders at the auction and the Court approved the sale to them. However, prior to the closing of the sale, a dispute arose as to whether the sale included a particular cattle chute which had been located on the property. As a result, the Order approving the sale provided that the cattle chute could not be

removed from the Imnaha River Ranch without further Order of the Court.[1] Shortly before closing, however, the Wikstroms discovered that the chute had been removed, in violation of the Order approving the sale.[2] Nevertheless, they agreed to proceed with closing and to escrow $15,000 of the sale proceeds pending resolution of the question of whether the cattle chute had been included in the sale.

The answer to that question turns, first, on the language of the sale contract itself. The Purchase and Sale Agreement between the Trackwells and the Wikstroms (the Sale Agreement) described the property being sold, in relevant part, as follows:

> The real estate and improvements situated in the County of Wallawa, State of Oregon, commonly known [as] 71690 Lower Imnaha Road, together with all buildings, improvements, fixtures, and property attached hereto and made a part hereof owned by the Seller located in, on, attached to, or used in connection with the Property. . . .[3]

In addition, the Sale Agreement provided that, "[u]nless otherwise indicated, no personal property will be sold."[4] Similarly, Exhibit C to the Sale Agreement, entitled "Personal Property List" stated only: "Unless otherwise indicated, no personal property will be sold." No personal property was listed on Exhibit C.

---

[1] *Order (I) Approving Purchase and Sale Agreement; (II) Authorizing and Directing the Sale of the Imnaha River Ranch, Free and Clear of Liens, Claims, Encumbrances and Interests; and (III) Granting Related Relief* (Doc No. 419) at ¶ 5.

[2] Judith Trackwell testified at the hearing that the people who removed other personal property off the ranch also mistakenly took the cattle chute and that it is being held in secure storage.

[3] Purchase and Sale Agreement at ¶ 2 (attached to *Order (I) Approving Purchase and Sale Agreement; (II) Authorizing and Directing the Sale of the Imnaha River Ranch, Free and Clear of Liens, Claims, Encumbrances and Interests; and (III) Granting Related Relief* (Doc. No. 419), admitted into evidence at the hearing as Exhibit 1).

[4] *Id.* at ¶ 21.

Under these provisions, the Sale Agreement plainly provided that no personal property was included in the sale. Thus, in order for the cattle chute to have been included in the sale, it must fall within the meaning of the phrase "attached hereto and made a part hereof owned by the Seller located in, on, attached to, or used in connection with the Property."

At the outset, the Wikstroms assert that this phrase should be interpreted to include any "property . . . used in connection with" the ranch, which would include the cattle chute. However, such an interpretation would include nearly *anything* located on the ranch, including vehicles and the like, which clearly was not intended by any party. Rather, in light of the clear exclusion of personal property in the Sale Agreement, I interpret the phrase to mean that, in order to be included in the sale, an item must have been "attached [to the Property] and made a part [of the Property]" – in effect, a fixture.

Because the Sale Agreement provided that "[t]he provisions of this Agreement shall be governed by, and construed and enforced in accordance with the laws of the state in which the Property is located,"[5] Oregon law controls.

As the Wikstroms assert, "[o]rdinarily, the party seeking relief bears the burden of proving all facts necessary to obtain that relief."[6] However, the Ninth Circuit has held that, when interpreting a contract such as this one, the meaning should not depend on who instituted the action.[7] Here, it could have been either

---

[5] *Id.* at ¶ 40. *See also* 35A Am.Jur.2d Fixtures § 4 ("Whether property is part of the real estate is determined according to the law of the jurisdiction in which the real estate is located.") (citation omitted).

[6] *State v. T.M.*, 229 Or. App. 325, 331, 211 P.3d 359, 363 (Or. App. 2009). *See also* 56 Am. Jur. 2d Motions, Rules, and Orders § 35 (2014) ("Ordinarily, the burden of proof regarding a motion is on the movant, who has the burden of demonstrating to the trial court's satisfaction that he is entitled to the relief requested . . . .") (citations omitted).

[7] *United Commercial Ins. Serv., Inc. v. The Paymaster Corp.*, 962 F.2d 853, 856 n. 2 (9th Cir. 1992) ("The Sixth Circuit has chosen to resolve a similar problem — where the contract is

the Trackwells or the Wikstroms who filed the motion bringing this matter to a head and I agree that, in this instance, the burden should not be placed on the party who chose to do so. The Wikstroms also assert that the burden of proof is on the party claiming that an item is personal property and not part of the realty. However, the cases they cite dealt with buildings or similar items that were at least constructively attached to the land,[8] which created a presumption that they were part of the land, and that presumption had to be rebutted by the party claiming the item was not a fixture. As discussed below, the cattle chute at issue here was not attached to the land. But, in any event, even if the burden does fall on the Trackwells to prove that the cattle chute was not a fixture, I find that they have satisfied the burden.

Under Oregon law, "[t]here is no definite, hard and fast rule by means of which the legal character of fixtures may be ascertained."[9] However, three tests are used as a "general guide to be modified by the particular circumstances in each case,"[10] namely:

> (1) Real or constructive annexation of the articles in question to the realty;

---

unclear and the court must choose one party's interpretation — by simply ruling against whatever party has the burden of proof. . . . We reject this approach. In this case, it would result in a ruling for Paymaster, since American chose to file this motion to determine its rights. Had American waited until Paymaster tried to collect on the judgment, on the other hand, such an approach would lead the Court to rule for American. The meaning of a contract should not depend on who instituted the litigation.") (citation omitted).

[8] *Waldorf v. Elliot*, 214 Or. 437, 441, 330 P.2d 355 (1961) ("As a general rule, a building on land is considered as part of the realty, or at least, it is so presumed; and the burden of proof is upon the party who claims that it is personal property to show that it retains that character.") (citing *Metropolitan Life Ins. Co. v. Kimball*, 163 Or. 31, 50-51, 94 P.2d 1101, 1108-09 (1939) (holding that prune drying equipment, which included buildings, and which was specially made for the land at issue, was a fixture)).

[9] *Dunn v. Assets Realization Co.*, 141 Or. 298, 301, 16 P.2d 370, 371 (1932).

[10] *Id.*

> (2) appropriation or adaptation to the use or purpose of that part of the realty with which it is connected; [and]
>
> (3) the intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the policy of the law in relation thereto, the structure and mode of the annexation, and the purpose or use for which the annexation has been made.[11]

As to the first element, annexation:

> Annexation, actual or constructive is an essential element. Pure examples of constructive annexation are found in cases where, after having been actually annexed, an article is severed from the realty for some temporary purpose. . . . [T]he courts in many of the states have abandoned the notion that to constitute an irremovable fixture the article must be attached to the land by bolts or nails or be imbedded in brick or stone.[12]

The cattle chute at issue here has also been referred to as a "hydraulic squeeze chute." The only evidence as to the nature of the cattle chute came from two photographs submitted by the Trackwells and the testimony of Debtor Judith Trackwell. She testified that cattle go into the chute, which is then squeezed tight by hydraulics, so that the animal is positioned to be inoculated or branded. In contrast to a "loading chute" located on the ranch, which is affixed to the land, she

---

[11] *Builders Appliance Supply Co. v. A.R. John Constr. Co.*, 253 Or. 582, 584-85, 455 P.2d 615, 617 (1969) (internal quotation marks omitted). *See also First State & Savings Bank v. Oliver*, 101 Or. 42, 48, 198 P. 920, 922 (Or. 1921) ("In deciding whether an article used in connection with real property should be considered as a fixture and a part and parcel of the land, as between a grantor and a grantee or mortgagor and mortgagee, the usual tests are: (1) Real or constructive annexation of the article to the realty; (2) appropriation or adaptation to the use or purposes of the realty with which it is connected; [and] (3) the intention to make the annexation permanent.").

[12] *First State & Savings Bank v. Oliver*, 101 Or. at 49 (citations omitted).

5

testified that this hydraulic squeeze chute is used throughout the ranch and is moved from location to location on the ranch by use of a trailer. The photographs corroborate this testimony. Most notably, the trailer on which the chute is transported about the ranch is relatively small and, although it currently has a damaged tire, appears to be readily moved by the use of a pickup truck. There was no evidence that the cattle chute is "actually" annexed to the land, or that it ever was so annexed. Moreover, while an item need not be "irremovable" or attached to the land by bolts or nails or imbedded in brick or stone in order to be a fixture,[13] the highly mobile nature of this squeeze chute demonstrates that it is not constructively annexed to the land, either. The Trackwells have therefore proven that the "essential element" of annexation is lacking.

Further, as to the second test, although the cattle chute is well-suited for and was, apparently, used often on the Imnaha Ranch, there was no evidence that it is particularly adapted for this ranch; rather, the evidence of its mobility showed it could easily be moved to, and used on, any cattle ranch. As a result, the second test fails as well.

Finally, as to the third test, the evidence was that neither the party who sold the property to the Trackwells, nor the Trackwells themselves, considered the cattle chute to be a fixture or intended that it become one.

"The intention of the party making the annexation is the most important element. . . . The relation and situation of the party making the annexation is an important factor and must be taken into consideration when attempting to ascertain his intention . . . when additions are made to land by the owner, the purpose is

---

[13] *Id.*

6

usually to enhance the value and to be permanent. . . ."[14] "The intention of making the article permanently accessory to the real property is to be inferred from the nature of the article, the relation of the party making or maintaining the annexation, the policy of the law in relation thereto, the structure and mode of annexation, and the purpose and use for which it is made."[15]

> It is the trend of judicial opinion to regard all of those things as fixtures which have been attached, whether physically or constructively, to the realty, with a view to the purposes for which the real property is held or employed, however slight or temporary the connection between the articles and the land. *The important element to be considered is the intention of the party making the annexation.* Neither the intention existing at the time of procuring the article nor that which exists while the same is being transported to the real property where it is designed to be placed, nor the secret plan in the mind of the person making the annexation, govern. *The controlling intention is that which the law deduces from all of the circumstances of the installation of the article upon the land.*[16]

The factor of intention is not to be determined by the owner's actual subjective intent, but "an objective and presumed intention of that hypothetical ordinary reasonable person, to be ascertained in the light of the nature of the article, the degree of annexation, and the appropriateness of the article to the use to which the realty is put."[17]

Judith Trackwell's uncontroverted testimony was that, as the owner of the Imnaha Ranch, she never considered the squeeze chute to be a fixture. Indeed, when she purchased the Imnaha Ranch in 2005, the hydraulic squeeze chute and

---

[14] *Builders Appliance Supply Co. v. A.R. John Constr. Co.*, 253 Or. at 586, 455 P.2d at 617 (quotation marks and ellipses omitted).

[15] *First State & Savings Bank v. Oliver*, 101 Or. at 49, 198 P. at 922.

[16] *Id.*, 101 Or. at 49-50 (citations omitted, emphasis added).

[17] *Marsh v. Boring Furs, Inc.*, 275 Or. 579, 583, 551 P.2d 1053, 1054 (1976).

the trailer were listed among the items purchased as "equipment" included in the purchase price. Again, this testimony was corroborated by the documentary evidence: At the hearing, the Trackwells submitted a "Hubbard Ranch Imnaha Equipment List" (the "Equipment List") which had been attached to the Sale Agreement when they bought the Imnaha Ranch in 2005, and the cattle chute and trailer are listed among several items of "livestock equipment" on that list. The livestock equipment list also included hay grapples, portable corrals, tub chutes, and a Kirby feedwagon.[18] In addition, the Equipment List also included several trucks and ATVs, among other items of personal property. It is evident that none of the items listed on the Equipment List were considered to be fixtures at that time. Judith Trackwell further testified that the equipment was included in the 2005 sale because she was buying a turn-key ranch operation at that time, whereas, in contrast, the auction sale here was not the sale of a turn-key operation, and so no equipment was included.

Each of the cases cited by the Wikstroms is distinguishable because the items there were at least constructively affixed to the land or particularly adapted to the land, such that one could infer an intent to make them a part of the land.[19]

---

[18] Exhibit 2 (Hubbard Ranch Imnaha Equipment List, Addendum C to the Sale Agreement dated May 28, 2005).

[19] *Johnson v. Hicks*, 51 Or.App. 667, 626 P.2d 938 (Or. App. 1981) (irrigation pipe which could be (and was) disconnected from the mainline irrigation and removed from the land by the adjacent landowner was nevertheless, a fixture and part of the real property, because the parties who installed the pipe agreed it was a fixture and treated it as such); *First State & Savings Bank v. Oliver*, 101 Or. 42, 198 P. 920 (1921) (two irrigation pumps and a motor which were moved from place to place on the ranch for irrigation purposes but were not removed from the ranch, were fixtures because the purposes for which the pumps and motor were used related to use of the land and it was "beyond comprehension" that the system was installed for any temporary purpose); *Marsh v. Boring Furs*, 275 Or. 579, 551 P.2d 1053 (1976) (mink pens were fixtures even though they were regularly removed from the land for cleaning and repair because they had been designed or modified for the particular sheds in which they were located; "The fact that the former chattel rests in a space in a building specially prepared for it creates a strong inference that it was intended to become part of the realty," and "the fact that the building was designed for

The cattle chute at issue here was neither affixed to the land, nor was it particularly suited to the Imnaha Ranch. And, Judith Trackwell's testimony was uncontradicted that it was never intended to be a fixture, and I find that the nature of the cattle chute and its lack of annexation to the land would not cause an ordinary reasonable person to believe it was. And, although custom and usage can be considered in interpreting a contract because both parties are assumed to have contracted with relation to it,[20] there was no evidence of custom or usage, other than the fact that the 2005 sale of the property to the Trackwells treated the cattle chute as equipment, not a fixture. I find, based on the foregoing, that the cattle chute was not a fixture and, therefore, was not included in the Sale Agreement.

The Wikstroms also assert that the cattle chute should be included because the auctioneer, Sheldon Good and Company, represented to them that it was included. Indeed, the Execution Summary and Bidders Packet published by Sheldon Good listed among property that was included in the sale a "hydraulic squeeze shoot [sic] located in the 40' x 140' metal barn on the property." The Wikstroms also assert that Sheldon Good's representative stated on more than one

---

one purpose which could be fulfilled only by attaching the mink pens raises the inference that the owner intended to integrate the building and pens into a single economic unit."); *Muir v. Jones*, 23 Or. 332, 31 P. 646 (1892) (holding that an engine, boiler, and other fixtures and attachments necessary to make a steam sawmill, which were stationary, permanently affixed to the soil and enclosed by brickwork, were fixtures and an agreement between two parties that the engine and boiler would remain personal property was not binding on a purchaser of the land with no notice of the parole agreement); *Waldorf v. Elliott*, 214 Or. 437, 330 P.2d 355 (1958) (grain tanks that were not attached to the realty and were held in place only by gravity, but had never been moved around the land, had become fixtures and were part of the realty as "constructively annexed" to the realty); *Metropolitan Life Ins. Co. v. Kimball*, 163 Or. 31, 94 P.2d 1101 (1939) (prune drying equipment was constructively annexed to the land, even though the equipment was never physically attached; however, the dryer consisted of two fire-proof buildings, one of which was constructed of concrete and tile, with heat furnished by large furnaces and with track set in concrete).

[20] *George v. School Dist. No. 8R of Umatilla County*, 7 Or. App. 183, 190, 490 P.2d 1009, 1012-13 (Or. App. 1971)

9

occasion that the chute was included, although they offered no evidence of such oral statements. Therefore, they assert, the cattle chute was included in the sale, regardless of whether it was "part of the real estate."[21]

The Wikstroms are correct that the parties could have agreed to include the cattle chute in the sale as personal property, even though it is not a fixture. However, since the Sale Agreement plainly excluded personal property, and I have concluded the cattle chute is personal property, in order for the Wikstroms to prevail, they must rely on the parol evidence rule to show that it was included, despite what the Sale Agreement provided.

> Oregon's parol evidence rule is stated in ORS 41.740:
>
> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore[,] there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term "agreement" includes deeds and wills as well as contracts between parties.[22]

The exception found in § 42.220 is as follows: "In construing an instrument, the circumstances under which it was made, including the situation of the subject and

---

[21] *Charles and Charlene Wikstrom's Objection to Debtor's Motion to Turnover Escrow Funds Being Held by First American Title Company of Oregon, Response to the Auctioneer's Objection and Request for the Escrowed Funds* (Doc. No. 524) at ¶ 12.

[22] Or. Rev. Stat. § 31.740.

of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting."[23]

> [T]he parol evidence rule is a substantive rule, because it declares that certain kinds of facts are legally ineffective in the substantive law governing the parties' contractual relationship. The parol evidence rule has an evidentiary consequence as well, because it requires the exclusion of evidence extrinsic to a fully integrated written agreement – that is, parol evidence – offered for the purpose of adding to, subtracting from, altering, varying or contradicting the terms of the written contract or to control its legal operation or effect, and . . . all oral negotiations or stipulations between the parties preceding or accompanying the execution of the written contract are regarded as merged in it.[24]

"The effect of the rule is that, as between the parties to a contract that is complete in itself and fully integrated, there is a conclusive presumption that the agreement is the embodiment of the terms of their understanding."[25]

> The prerequisite to application of the parol evidence rule, that the agreement be "integrated," means that the agreement is one that the parties intended to be a final expression of some or all of the terms of the agreement. The parol evidence rule applies only to those aspects of a bargain that the parties intend to memorialize in such a writing. It does not come into play if the parties do not intend the writing to embody their final agreement, or when they intend the writing to contain only part of their agreement. To determine whether a contract is integrated, the court may consider all relevant evidence, including parol evidence. If the court determines that the writing is not integrated because it is not a full expression of all or some of the terms of the agreement, the extrinsic evidence is admissible.[26]

---

[23] Or. Rev. Stat. § 42.220.

[24] *Berger v. Stephan*, 241 Or. App. 399, 410, 250 P.3d 954, 961 (Or. App. 2011). (citation and internal quotation marks omitted).

[25] *Id.*

[26] *Id.*, 241 Or.App. at 410-11, 250 P.3d at 962.

11

I find that the parties did intend for the Sale Agreement to be the final expression of all of the terms of the agreement. Indeed, the Sale Agreement expressly, and very clearly, so provides:

> **ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the parties as to the subject matter hereof and supercedes all prior understandings and agreements. There are no representations, agreements[,] arrangements[,] or understandings oral or written between the parties, including the Broker, relating to the subject matter contained in this Agreement which is not fully expressed or referred to herein.[27]

Based on this language, there can be no doubt that, when the parties signed the Sale Agreement, they considered it to be the full and final memorialization of the sale. I also considered it to be the full and final agreement when I entered the Order approving it. Any prior understandings between the Wikstroms, the Trackwells, and Sheldon Good were, therefore, merged into and superseded by this Sale Agreement. As the Sale Agreement was intended to be the embodiment of the entire agreement, the parol evidence rule prohibits consideration of prior discussions between the Wikstroms and Sheldon Good.

ACCORDINGLY, the Debtors' Motion to Turn Over Escrow Funds is GRANTED. The Debtors are permitted to keep the cattle chute. First American Title Company of Oregon is ORDERED, within 7 days, to disburse the $15,000 being held in escrow to Debtors' counsel. Each party to bear its own costs.

IT IS SO ORDERED.

Dated: 11/19/2014                     /s/ Arthur B. Federman
                                       Chief Bankruptcy Judge

---

[27] Sale Agreement at ¶ 32.